## FANNY LA MOTTE *v.* LAWRENCE ARCHER.

Where a defendant was sued for a tort, by the name of Lawrence Archer, and there was no proof showing whether Lawrence Archer was a male or female, but the witnesses spoke of the tort feasor as " the defendant" and also as " Mrs. Archer," using both these designations frequently throughout the testimony, as convertible terms; *held*, that the court could not presume that the tort feasor was a woman having a husband, and that the defendant named in the proceedings was such husband, and then reverse a judgment in the plaintiff's favor for the nonjoinder of the wife as defendant.

The court cannot say, judicially, that the name " Lawrence" may not designate a female.

Whether, if Lawrence Archer were the husband of the tort feasor, and were sued alone for the tort, he could avail himself of the nonjoinder as a defence, without setting it up in the answer ?    *Quere.*

If a defendant, having a lien upon chattels, refuse to deliver them upon a tender of the amount of the lien, the lien is discharged, and his refusal subjects him to an action for their value as for a conversion.

Where the evidence wholly fails to support a judgment for the damages awarded, but would sustain a judgment for a less amount, the court, on appeal, may suffer the plaintiff to retain the judgment for such sum as appears just, and may reverse as to the excess, if the plaintiff so elect.

THIS action was commenced in the Third District Court, by a summons issued against " Lawrence Archer," as defendant, for the wrongful detention and conversion of certain household furniture. The parties appeared by their respective counsel, and the counsel for the defence pleaded a general denial. Throughout the trial, the witnesses repeatedly mentioned the defendant as " Mrs. Archer," and as " the defendant," indiscriminately, and in referring to the defendant, employed the pronouns " she" and " her." There was no proof showing that " Lawrence Archer" was a male or a female, but the plain inference justified by the language of the witnesses was, that the tort feasor was a woman. The court below having given judgment for the plaintiff, the counsel for the defence, on appeal to this court, contended, in effect, that the summons and proceedings, in containing the

La Motte *v.* Archer.

name, "Lawrence Archer," as the defendant, showed, in themselves, that the party sued was a male ; while, from the testimony it appeared that the alleged tort was committed by a female. That the only inference, if any, which could be deduced from the evidence, at all favorable to the plaintiff, was, that the defendant was the husband of the tort feasor, in which case the judgment should be reversed for the nonjoinder of the wife as a defendant.

The case upon the merits, as disclosed in the return, appears in the discussion of the testimony contained in the opinion.

*William C. Carpenter* and *William B. Wedgwood,* for the defendant.

*Alanson Nash* and *Joseph Breck,* for the plaintiff.

By the Court. Woodruff, J.—It is urged by the counsel for the appellant that the judgment for the plaintiff herein is erroneous in this, that the unlawful detention for which the suit is brought, if any such detention was proved, was not by the defendant, but by some person who, upon the evidence, can at most only be taken to be the defendant's wife, and for which the defendant is not liable, unless sued jointly with the wife.

On this point it may suffice to say, that the return does not show any such state of the facts. The witnesses speak of the defendant as the person who detained the goods. " The defendant had the things." " The defendant said she had paid $15," &c., &c. " The defendant admitted she had these articles." " Defendant said," &c., " I went with plaintiff to defendants." Another witness says, " plaintiff boarded with defendant three months ;" " the things were to remain with the defendant ;" " have heard the defendant say she had been paid some money ;" " plaintiff wanted defendant to get the things out of pledge." Another witness heard plaintiff say, " she had sold these things to the defendant." Another, " defendant keeps a house of prostitution," and in as many

instances, and in the like connection, the defendant is called "Mrs. Archer." And throughout the whole testimony the designation, "Mrs. Archer" and "the defendant," are constantly used as convertible terms, designating the same person, and nowhere is it suggested that they are not the same person, or that the defendant is a man.

I know of no rule by which, upon such a state of the proofs, the court can assume that the defendant, Lawrence Archer, is a man, and that the Mrs. Archer, so often named as the defendant, is not the defendant, but is his wife. We cannot say that the name "Lawrence"—a very common surname—may not, when used as a Christian name, be applied to a female; and if we could indulge in a presumption that it *prima facie* designates a male person, the manner in which the witnesses speak of the defendant would rebut it.

So that, besides the other answer to this ground of appeal, viz., that if the defendant sued be in truth the husband of the alleged tort feasor, and the tort be alleged as committed by a person who is his wife, he should have set up the nonjoinder in his answer, or by demurrer, if the fact appeared in the complaint. The facts proved do not warrant the objection in any form.

On the merits I am constrained to say, that the evidence is loose and obscure, and I cannot say that it is altogether satisfactory; in some respects it is quite conflicting. That the property sued for belonged to the plaintiff originally, and that it is in the defendant's possession, detained by her notwithstanding the plaintiff's demand, does not appear to be doubtful upon the evidence. The property designated in the complaint consists of one bureau, one table and one washstand. The defendant justifies the detention, or attempts to do so, in his proofs—although no such justification is set up in the answer—by a claim that she purchased the bureau from the claimant, and that she had advanced money to the plaintiff upon the table and washstand, or rather the pawn tickets therefor, and had further advanced money to redeem them from the pawnbroker, and so held them in pledge by

La Motte *v.* Archer.

way of security for the repayment. There is some conflict in regard to the amount for which the table and washstand had been pawned. The plaintiff, when examined by the defendant, states that the table and washstand were in for $12; and that the defendant advanced her $3 on the ticket for the washstand and $2 on the ticket for certain spoons, while another witness states the loan to the plaintiff upon table, washstand and spoons was $8.

The plaintiff's testimony alone would show that the defendant's whole advance on the articles sued for was $15. But in connection with the evidence of the last witness, it would warrant the inference that the advance to the plaintiff, exclusive of the loan upon the ticket for the spoons, was $6 on the table and washstand, and the whole amount, therefore, $18.

But the witness who swears that he took the washstand and table out of pawn, testifies that he paid about $8 to the pawnbroker; if to this be added the $6 advanced to the plaintiff herself, the amount for which she had a lien was only $14 upon these two articles.

The proof is on the part of the plaintiff, that when she demanded her goods she offered to pay $20; and this is more than, upon any view of the evidence, I can discover the plaintiff to be entitled to for the discharge of any lien upon this particular property. And the conversation between the parties goes even further, and indicates, in substance, a readiness to pay whatever was due to the defendant, and the defendant declared that she could not tell how much was due. What may be the balance due between these parties upon an account of all their dealings, it is certainly difficult to say upon the evidence given; but it seems to me reasonably certain, that the evidence warranted the inference that the plaintiff, upon making the demand, tendered as much, or more, than the amount of any lien held upon the articles mentioned in the complaint, and if so, the lien was discharged, and as to the washstand and table the plaintiff was entitled to recover. As to the bureau, there was some evidence that the defendant

had paid for it, and yet the defendant made no such claim when the demand was made,

Upon the whole subject the evidence was loose and conflicting. But we cannot, I think, say, that when the court below was investigating the transactions between parties living in and keeping a house of prostitution, and drawing their evidence from their inmates, and the witnesses were before the court, which had an opportunity to judge of their credibility by their appearance and manner of testifying, we should, upon any but the most decisive grounds, disturb any finding of fact upon loose, vague or conflicting testimony.

But upon the question of damages, we think there was a palpable error committed, which can only be accounted for by supposing that the court below acted under some gross mistake. There were only three articles sued for—a bureau, washstand and table. The action being in the nature of the action of trover, the plaintiff could only recover the value of the goods, with interest from the time of the conversion—in this case the demand and refusal.

The only proof of value here, was evidence of the cost of the articles which was testified to without objection, and shown to be $78, and the interest would be very slight, as the demand was only made within a week of the trial; and yet the court below have rendered judgment for $100 damages.

It is obvious that this mode of proving value was incompetent, and had it been objected to, must have been rejected. The property may have cost more than it was worth, and, under the circumstances disclosed, it is hardly possible that it is now worth its original cost; and yet had the damages been confined to that amount, no objection having been taken on the trial to this mode of ascertaining value, I should not be inclined to interfere with the assessment. The amount of damages given ($100) is wholly without evidence in its support, and upon this ground we should be warranted in reversing the judgment. But the Code requires us to do substantial justice between the parties, if the case has been fully investigated; and my conclusion is, that we should give the plain-

La Motte *v.* Archer.

tiff the privilege of making a reasonable abatement from the amount of the judgment, and suffer it to stand for the residue.

Although a finding of the value at $78 might, perhaps, be sustained, I am not satisfied that the three articles have not depreciated since they were purchased; and in view of all the circumstances disclosed by the evidence, I think that the plaintiff will be fully indemnified by a recovery of $60 damages and her costs below. If this be deemed arbitrary and speculative, let it be answered that the court do not require the plaintiff to make such an abatement. No injustice is done to her, since there is a sufficient ground for a reversal. She may elect to make the abatement or not, at her pleasure.

It is proper to add, in relation to the allegation that the justice rendered judgment after he had lost jurisdiction, by the lapse of the four days limited by statute, that, although we regard the objection, in point of law, well taken, and have heretofore so held and reversed a judgment upon that ground, we do not so understand the fact in this case. By the return, as we read it, the cause was submitted on the 24th, and the judgment rendered on the 27th, which was before the four days had expired.

The order should be, that if the plaintiff elect within ten days to reduce the damages to $60 and her costs below, and file written statements of such election with the clerk, the judgment is affirmed to that extent, and recovered as to the residue, without costs to either party on appeal; in default of such election, the judgment is reversed, with costs.

Ordered accordingly.